IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BETHANY MORGAN,                    )
                                   )
                  Plaintiff,       )
                                   )
vs.                                )        Case No. 08-1392-JTM
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
                  Defendant.       )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties and has been referred to this court for a recommendation
and report.

## I.  General legal standards

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On October 25, 2007, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 17-27).  Plaintiff alleges that she has been disabled since September 9, 2001 (R. at 17). Plaintiff is insured for disability insurance benefits through

December 31, 2006 (R. at 19).  At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since September 9, 2001, the alleged onset date of disability (R. at 19).  At step two, the ALJ found that plaintiff has severe impairments of mild degenerative disc disease of the lumbar spine, myofascial pain and shoulder pain status post surgery (R. at 19).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20).  After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is able to perform past relevant work as a waitress, cashier/stocker, short order cook and sewing machine operator (R. at 26).  The ALJ also noted that the VE testified that if plaintiff were not able to return to past work, there were a significant number of jobs available which a person with plaintiff's limitations could perform (R. at 26).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26-27).

**III.  Did the ALJ err in his analysis of the weight accorded to the opinions of Dr. Gillenwater, a treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is

generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating

physician opinion is not given controlling weight, the ALJ must

nonetheless specify what lesser weight he assigned the treating

physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083

(10th Cir. 2004).  A treating source opinion not entitled to

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

     After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

     On September 27, 2006, Dr. Gillenwater filled out a physical

medical source opinion questionnaire on the plaintiff (R. at 141-

145).  He indicated that he had had four contacts with the

plaintiff between May and September 2006.  He diagnosed plaintiff

with: 1) disc protrusion at L5-S1 with associated neuroforaminal

stenosis causing nerve root impingement with low back pain and left leg radiculopathy, and 2) myofascial pain syndrome (R. at 141, 155). Dr. Gillenwater indicated plaintiff had constant pain in the lower back and leg pain, moderate to severe, and worse pain caused by sitting more than 10 minutes or walking more than 100 feet. He also noted upper back pain (R. at 141). Dr. Gillenwater reported straight leg raising test findings for the plaintiff and sensory abnormalities. He indicated that plaintiff's impairments can be expected to last 12 months, and opined that plaintiff was not a malingerer (R. at 142). He stated that plaintiff's impairments (physical impairments plus any emotional impairments) were reasonably consistent with the symptoms and functional limitations described on the form (R. at 142-143). Dr. Gillenwater indicated that plaintiff's pain and symptoms would frequently interfere with attention and concentration needed to perform even simple work tasks (R. at 143).

Regarding specific limitations, Dr. Gillenwater opined that plaintiff could walk less than 1 block without rest or severe pain, can sit for 15 minutes at a time, and stand for 10 minutes at a time. He felt plaintiff could sit for 4 hours in an 8-hour workday, and could stand/walk for 4 hours in an 8-hour workday. He indicated that plaintiff must walk every 15 minutes, and for 10 minutes at a time (R. at 143). He stated that plaintiff must

be able to shift positions at will from sitting, standing, or walking, and must take two unscheduled breaks during an 8-hour workday. The breaks would need to be 30 minutes in length, and plaintiff must be able to lie down. He stated that plaintiff can frequently lift less than 10 pounds, and occasionally lift 10 pounds. He further indicated that plaintiff can rarely twist, can never stoop, and can occasionally crouch and climb (R. at 144). Dr. Gillenwater stated that plaintiff would, on average, miss more than four days a month due to plaintiff's impairments or treatment (R. at 145).

The ALJ provided the following discussion of the opinions of Dr. Gillenwater and other relevant medical evidence:

> Although Dr. Gillenwater provided a residual functional assessment at the request of the claimant and representative, this appears to be based on the claimant's subjective complaints rather than objective evidence. He indicated limitations to a range of light work with the probable need to miss work more than four days a month. However, this is not reflected in the evidence. The claimant has only presented to Dr. Gillenwater on seven occasions and only for lumbar injections. His records indicate improvement following each injection lasting for several months. This is consistent with the claimant's return to the doctor every few months for these injections. There is no evidence of impairment provided by other treating sources including the general physician. The claimant was treated by Dr. Cowden through 2005. He found no disabling impairment and denied three separate requests for disability placards noting the claimant had no problems with walking. It is noted that the claimant reported neck problems to Dr. Cowden, yet was

seeking disability statements regarding an inability to walk. Dr. Cowden referred the claimant to Dr. Steffen who did not find disabling impairments. He noted drug seeking behavior and discontinued treatment. After that the claimant was able to get injections and pain medication from Dr, Gillenwater without evidence of other treatment...

As for the opinion evidence, other than the statements completed by Dr. Gillenwater as noted above, no other doctor who has treated or examined the claimant has stated or implied that she is disabled or seriously incapacitated. As noted, x-rays showed some mild degenerative disc disease with the MRI noting some protrusion at L5-S1 without definite stenosis. The claimant's description of pain has not been consistent. In 2005, she reported neck pain. However, x-rays of the cervical spine were normal (exhibit B1F, B6F). In May 2006, she told Dr. Gillenwater that the pain was worse with standing or walking and better when sitting (exhibit B9F/ 109), However, Dr. Gillen[water] completed a residual functional assessment in September 2006 indicating sitting 15 minutes at a time for 4 hours in an 8 hour day (exhibit 1B10F). At the hearing, she stated that she can only sit 10 to 15 minutes. At the same time, the medical evidence identifies no clinical signs typically associated with chronic musculoskeletal pain such as muscle atrophy, muscle spasms, neurological deficits, positive straight leg-raising, inflammatory signs, or bowel or bladder dysfunction. The claimant has had no surgery or inpatient hospitalization. She has not been referred for physical therapy. The claimant testified that she is depressed and unable to concentrate. However, the consultative psychological examination found no severe impairments indicating the depression in remission with medication (exhibit B5F). It is also noted that the claimant has not sought any psychotherapy or other mental health treatment.

(R. at 25-26).  The ALJ made RFC findings which were in general agreement with the opinions of a state agency non-examining physician (R. at 26).

The court finds numerous errors by the ALJ in his analysis of the opinions of Dr. Gillenwater and his review of the medical evidence.  First, the ALJ stated that Dr. Gillenwater's RFC assessment appeared to be based on plaintiff's subjective complaints rather than objective evidence.  However, there is nothing in Dr. Gillenwater's assessment that indicates that he relied solely on plaintiff's subjective complaints.  Furthermore, a review of Dr. Gillenwater's medical records on the plaintiff indicate that he performed a physical examination on the plaintiff on May 31, 2006, July 17, 2006 and August 7, 2006, and reported the results of those physical examinations (R. at 163, 158, 155).  In his assessment, Dr. Gillenwater set forth the signs, findings and symptoms of plaintiff's impairments, including positive straight leg raising tests (R. at 141, 142).  Dr. Gillenwater indicated that the MRI test was compatible with nerve root compression (R. at 142).  He also indicated that plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the assessment (R. at 142-143).

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

11

The ALJ also improperly rejected Dr.
Hjortsvang's opinion based upon his own
speculative conclusion that the report was
based only on claimant's subjective
complaints and was "an act of courtesy to a
patient." Id. The ALJ had no legal nor
evidentiary basis for either of these
findings. Nothing in Dr. Hjortsvang's reports
indicates he relied only on claimant's
subjective complaints or that his report was
merely an act of courtesy. "In choosing to
reject the treating physician's assessment,
an ALJ may not make speculative inferences
from medical reports and may reject a
treating physician's opinion outright only on
the basis of contradictory medical evidence
and *not due to his or her own credibility
judgments, speculation or lay opinion*."
McGoffin v. Barnhart, 288 F.3d 1248, 1252
(10th Cir.2002) (quotation omitted; emphasis
in original). And this court "held years ago
that an ALJ's assertion that a family doctor
naturally advocates his patient's cause is
not a good reason to reject his opinion as a
treating physician." Id. at 1253.

More recently, in the case of Victory v. Barnhart, 121 Fed. Appx.

819 (10th Cir. Feb. 4, 2005), the court held:

The ALJ's finding that Dr. Covington's
opinion was based on claimant's own
subjective report of her symptoms
impermissibly rests on his speculative,
unsupported assumption. See Langley, 373 F.3d
at 1121 (holding that ALJ may not reject a
treating physician's opinion based on
speculation). We find no support in the
record for the ALJ's conclusion. Nothing in
Dr. Covington's report indicates that he
based his opinion on claimant's subjective
complaints, and the ALJ's finding ignores all
of Dr. Covington's examinations, medical
tests, and reports. Indeed, the ALJ's
discussion of Dr. Covington omits entirely
his March 22, 2001 examination and report.
His April 3, 2001 statement might well have
been based on his recent first-hand

12

> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ speculated.
> See Morales v. Apfel, 225 F.3d 310, 317 (3d
> Cir.2000) (noting that the treating
> physician's opinion may "reflect expert
> judgment based on a continuing observation of
> the patient's condition over a prolonged
> period of time").

121 Fed. Appx. at 823-824.

There is no evidentiary basis for asserting that the opinions of Dr. Gillenwater are based only on plaintiff's subjective complaints. Nothing in Dr. Gillenwater's assessment indicates that he relied solely on plaintiff's subjective complaints, and the ALJ's findings ignores the fact that On May 31, July 17, and on August 7, 2006, Dr. Gillenwater conducted physical examinations of the plaintiff and reported those results in his medical records. Dr. Gillenwater also saw and observed the plaintiff on September 26, 2006 (R. at 141, 150-151). He also cited to positive straight leg raising tests and MRI tests when offering his opinions (R. at 141, 142). As was the case in Victory, Dr. Gillenwater's opinions might well have been based on testing and his first-hand examinations and observations of the plaintiff in May, July, August and September 2006, rather than relying solely on plaintiff's subjective complaints.

Second, the ALJ asserted that the medical evidence identified no clinical signs typically associated with chronic musculoskeletal pain such as muscle atrophy, muscle spasms,

neurological deficits, positive straight-leg raising, inflammatory signs, or bowel or bladder dysfunction (R. at 26; Doc. 13 at 6-7). However, the ALJ did not cite to any medical evidence to support this assertion. In the case of <u>Bolan v. Barnhart</u>, 212 F. Supp.2d 1248, 1255 (D. Kan. 2002), plaintiff was found to have a severe impairment of degenerative disc disease of the lumbar spine. The ALJ in <u>Bolan</u> discounted a medical opinion (that the claimant was disabled) from a medical treatment source because the medical evidence identified:

> no clinical signs typically associated with chronic musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, neurological deficits, etc...

The court in <u>Bolan</u> then held as follows:

> ...the ALJ's broad assertion that the "medical evidence identifies no signs typically associated with chronic musculoskeletal pain, such as muscle atrophy, deformity, loss of motion, neurological deficits" is an improper justification for disregarding an opinion of a treating source. The ALJ is not a medical expert on identifying the clinical signs typically associated with chronic musculoskeletal pain. Thus, the ALJ is not entitled to *sua sponte* render a medical judgment of what he thinks are the clinical signs typically associated with chronic musculoskeletal pain without some type of support for this determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.

212 F. Supp.2d at 1262. In the case before the court (<u>Morgan</u>), in which the ALJ found that plaintiff's severe impairments

14

included mild degenerative disc disease of the lumbar spine, the ALJ, as in <u>Bolan</u>, erred by *sua sponte* rendering a medical judgment of what he thinks are the clinical signs typically associated with musculoskeletal pain due to degenerative disc disease of the lumbar spine without citing to any evidence to support that assertion.

Third, the ALJ erroneously asserted that the medical evidence identified no clinical signs of positive straight-leg raising (R. at 26). However, medical records from Dr. Gillenwater document positive straight-leg raising in both legs on the following dates:

> May 31, 2006 (R. at 163)
> July 17, 2006 (R. at 158)
> August 7, 2006 (R. at 155)
> November 28, 2006 (R. at 148)
> July 9, 2007 (R. at 122)

Dr. Gillenwater's assessment of September 27, 2006 also noted positive straight-leg raising in both legs (R. at 141, 142). Furthermore, the medical records from Dr. Gillenwater document positive straight-leg raising in the right leg only on the following dates:

> February 2, 2007 (R. at 139)
> April 3, 2007 (R. at 132)

Although the defendant, in support of his argument that substantial evidence supported the ALJ's evaluation of the medical evidence, pointed out that the ALJ noted that the medical evidence identified no clinical signs typically associated with

15

musculoskeletal pain, including positive straight leg raises (Doc. 13 at 6-7), the defendant later indicated that the medical record did show that plaintiff exhibited some positive straight-leg raises (Doc. 13 at 8).

Fourth, the ALJ also relied on the fact that plaintiff had not had surgery or inpatient hospitalization, and had not been referred to physical therapy, when considering the medical evidence relating to plaintiff's RFC, including the opinions of Dr. Gillenwater (R. at 26; Doc. 13 at 7). However, the ALJ did not cite to any evidence regarding the relevance or significance, if any, of the fact that plaintiff had not had surgery, inpatient hospitalization, or physical therapy. In the case of <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that the claimant did not require an assistive device for his neck. The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief. The court stated that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. As noted above, the ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. <u>Bolan</u>, 212 F. Supp.2d at 1262.

In the absence of any medical evidence indicating the relevance or significance of the fact that plaintiff did not

receive certain treatments, the ALJ is in no position to render a medical judgment regarding the relevance or significance of the fact that plaintiff did not receive certain treatments. <u>Park v. Astrue</u>, Case No. 07-1382-MLB, 2008 WL 4186871 at *5 (D. Kan. Sept. 9, 2008, Doc. 17 at 11-12); <u>see</u> <u>Newman v. Astrue</u>, Case No. 08-1391-JTM (D. Kan. Feb. 2, 2010; Doc. 18 at 10-12)(ALJ erred by failing to cite to any medical evidence to support his assertion that plaintiff had not received the type of treatment one would expect for a totally disabled individual); <u>Burton v. Barnhart</u>, Case No. 06-1051-JTM (D. Kan. Nov. 1, 2006; Doc. 12 at 15)(ALJ erred by relying on the lack of certain types of treatment in the absence of any evidence that such treatment was recommended, would have lessened the claimant's limitations, or provided pain relief); <u>Mazza v. Barnhart</u>, Case No. 06-1018-JTM (D. Kan. Oct. 25, 2006; Doc. 13 at 20)(same). For this reason, the ALJ erred by relying on the absence of surgery, hospitalization, or physical therapy without any medical evidence regarding the relevance or significance of the lack of such treatment.

Fifth, the ALJ's analysis of the medical evidence, quoted above, included the following specific assertion:

> In May 2006, she told Dr. Gillenwater that the pain was worse with standing or walking and better when sitting (exhibit B9F/109), However, Dr. Gillen[water] completed a residual functional assessment in September 2006 indicating sitting 15 minutes at a time for 4 hours in an 8 hour day (exhibit 1B10F).

17

(R. at 25).  However, the ALJ misstated the medical evidence which he cited.  The medical record states the following:

> The patient states the pain is typically worse when she is standing or walking and usually better when she sits, **although sitting for extended periods of time will aggravate the pain**.

(R. at 163, emphasis added).  Although the ALJ relies on the first portion of the sentence indicating that plaintiff's pain is better when she sits to question the opinion of Dr. Gillenwater that plaintiff can sit for only 15 minutes at a time for 4 hours in an 8 hour day, the ALJ failed to mention the last portion of the sentence that sitting for extended periods of time will aggravate the pain.  The ALJ cannot distort the evidence and ignore evidence favorable to the plaintiff.  <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

Sixth, the ALJ indicated that an MRI showed some protrusion at L5-S1, "without definite stenosis" (R. at 25).  However, the ALJ failed to mention that Dr. Shah, in reviewing the MRI from 2005, stated the following: "It shows a herniated disc at L5-S1 with some central and some foraminal stenosis" (R. at 120).  Foraminal stenosis is similar to spinal stenosis but is singled out because it primarily affects one or more veretebral foramen, or areas of the spine.[1]  An ALJ must evaluate every medical

---

[1] http://www.ortho-spine.com (Feb. 10, 2010); http://www.bonati.org/glossary (Feb. 10, 2010); http://blog.zerospinepain.com (Feb. 10, 2010).

opinion in the record. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004). It is clear legal error to ignore a medical opinion. <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). The ALJ clearly erred by failing to consider the medical opinion of Dr. Shah on this issue.[2] Because of the numerous errors by the ALJ in his analysis of the opinions of Dr. Gillenwater and the other medical evidence, this case should be remanded in order for the ALJ to make new RFC findings after giving proper consideration to the opinions of Dr. Gillenwater and the other medical evidence.

Finally, the ALJ asserted that there was no "definite" evidence of nerve root impingement (R. at 25). However, it is not clear that the ALJ considered the relevance, if any, of the 2007 MRI test which showed "probable associated displacement of the S1 nerve root" (R. at 118)[3], or that Dr. Gillenwater stated that an MRI test was compatible with nerve root compression (R. at 142). When this case is remanded, the ALJ should discuss this evidence and consider obtaining further medical opinion evidence

---

[2]The statement by Dr. Shah appears to corroborate the diagnosis of Dr. Gillenwater that plaintiff had neuroforaminal stenosis (R. at 141, 155).

[3]Although the ALJ had mentioned this finding on the 2007 MRI earlier in his opinion (R. at 23), it is not clear that the ALJ considered the relevance of this 2007 MRI finding on the question of nerve root impingement.

on this issue.[4]

## IV.  Did the ALJ err in his step four analysis?

At step four, the ALJ is required by Social Security Ruling
(SSR) 82-62 to make findings of fact regarding: 1) the
individual's residual functional capacity, 2) the physical and
mental demands of prior jobs or occupations, and 3) the ability
of the individual to return to the past occupation given his or
her residual functional capacity.  Henrie v. United States Dep't
of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final
phase of the analysis, the ALJ determines whether the claimant
has the ability to meet the job demands found in phase two
despite the mental and/or physical limitations found in phase
one.  At each of these three phases, the ALJ must make specific
findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir.
2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).[5]

_____

[4]Although not mentioned by the parties, the court would
suggest that the ALJ address one other issue when this case is
remanded in order to expedite resolution of this case.  Dr.
Gillenwater stated that plaintiff's pain and other symptoms were
severe enough to frequently interfere with attention and
concentration needed to perform even simple tasks (R. at 143).
This limitation was not specifically addressed by the ALJ.  On
remand, this opinion should be considered in light of the
consultative psychological examination by Dr. Schwartz, who
opined that plaintiff "appears to have some difficulties with
attention, concentration and short-term memory", that she can
remember "simple" procedures, and that she would probably need to
work in a job that is rather repetitive (R. at 196).

[5]In Winfrey, the court noted that the Secretary glossed over
the absence of the required ALJ findings by relying on the
testimony of the vocational expert (VE) that plaintiff could meet

An ALJ can comply with these requirements if he quotes the VE's

testimony with approval in support of his own findings at phases

two and three of the step four analysis.  <u>Doyal v. Barnhart</u>, 331

F.3d 758, 760-761 (10th Cir. 2003).[6]  When the ALJ fails to make

---

the mental demands of his past relevant work, given his mental
limitations as found by the ALJ.  The court stated that this
practice of delegating to a VE many of the ALJ's fact finding
responsibilities at step four appears to be of increasing
prevalence and is to be discouraged.  The court went on to say as
follows:

> Requiring the ALJ to make specific findings
> on the record at each phase of the step four
> analysis provides for meaningful judicial
> review.  When, as here, the ALJ makes
> findings only about the claimant's
> limitations, and the remainder of the step
> four assessment takes place in the VE's head,
> we are left with nothing to review...a VE may
> supply information to the ALJ at step four
> about the demands of the claimant's past
> relevant work...[but] the VE's role in
> supplying vocational information at step four
> is much more limited than his role at step
> five...Therefore, while the ALJ may rely on
> information supplied by the VE at step four,
> the ALJ himself must make the required
> findings on the record, including his own
> evaluation of the claimant's ability to
> perform his past relevant work.

<u>Winfrey</u>, 92 F.3d at 1025.

    [6]The ALJ's findings in <u>Doyal</u> were as follows:

> The vocational expert testified that the
> claimant's past relevant work as a
> housecleaner and sewing machine operator
> would be classified as light and unskilled,
> and her past relevant work as an activities
> director would be classified as light and
> semiskilled.... The vocational expert
> indicated that the claimant's past relevant

findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis. <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); <u>Frantz v. Astrue</u>, 509 F.3d at 1303-1304; <u>Kilpatrick v. Astrue</u>, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).

Although there is some question from the record as to whether the ALJ made the necessary phase two findings of the physical demands of plaintiff's prior jobs, the ALJ further indicated in his decision that the VE found that plaintiff could perform a significant number of other jobs that plaintiff could perform (R. at 26). On remand, the ALJ shall make step four findings in accordance with the above case law and agency rulings. However, the court would note that when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error. <u>Martinez v. Astrue</u>, 2009 WL 721687 at *3

---

work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

<u>Doyal</u>, 331 F.3d at 760. The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator. 331 F.3d at 761. As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

(10th Cir. Mar. 19, 2009); <u>see</u> <u>Murrell v. Shalala</u>, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

## V.  Can the plaintiff perform some of the jobs identified in light of his limitation to occasional overhead reaching?

In his RFC findings and in his hypothetical question to the vocational expert (VE), the ALJ limited plaintiff to "occasional" over shoulder reaching (R. at 20, 301).  Plaintiff argues that some of the jobs identified by the VE as jobs that plaintiff could perform require "frequent" or "constant" reaching (Doc. 8 at 26).[7]

in the case of <u>Segovia v. Astrue</u>, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007), the court held as follows:

> Both the ticket-taker and cafeteria-attendant positions require..."frequent" reaching, see SCO §§ 09.05.02, 09.05.08; Aplt.App. at 439, 446, while Ms. Segovia is limited to occasional overhead reaching. For purposes of the SCO, however, "reaching" is defined as "[e]xtending hand(s) and arm(s) in any direction." SCO at C-3 (emphasis added). **The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. The VE was aware of Ms. Segovia's limitations on overhead reaching, and he testified both that she could perform**

---

[7]According to the <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (U.S. Dept. of Labor, 1993 at C-3), "occasionally" involves an activity existing up to 1/3 of the time, "frequently" involves an activity existing from 1/3 to 2/3 of the time, and "constantly" involves an activity or condition that exists 2/3 or more of the time.

> the jobs he identified and that his opinion
> of the jobs open to her was consistent with
> the DOT's specifications. Aplt.App. at
> 391-92, 395. In these circumstances, the VE's
> testimony does not conflict with the DOT and
> SCO so much as it clarifies how their broad
> categorizations apply to this specific case.
> See <u>Carey v. Apfel</u>, 230 F.3d 131, 146 (5th
> Cir.2000) ("To the extent that there is any
> implied or indirect conflict between the
> vocational expert's testimony and the DOT in
> this case, ... the ALJ may rely upon the
> vocational expert's testimony provided that
> the record reflects an adequate basis for
> doing so.... [A]ll kinds of implicit
> conflicts are possible and the categorical
> requirements listed in the DOT do not and
> cannot satisfactorily answer every such
> situation."). Further, the DOT descriptions
> for cafeteria attendant and ticket taker do
> not indicate that these jobs predominantly
> involve overhead reaching rather than other
> types of reaching. See DOT §§ 311.677-010,
> 344.667-010; Aplt.App. at 437, 445.

(emphasis added).

Although plaintiff indicated that certain jobs identified require frequent or constant reaching, plaintiff did not argue or cite to any authority indicating that these jobs require frequent or constant overhead reaching. The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. The VE was informed that plaintiff was limited to occasional overhead reaching. The VE indicated that the Dictionary of Occupational Titles (DOT) does not specify overhead reaching. The VE testified that his

testimony was based on personal experience regarding the issue of overhead reaching (R. at 308). As the court held in Segovia, in these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case. Therefore, the court finds no error on this issue.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 14 days after being served with a copy.

Dated at Wichita, Kansas, on February 16, 2010.

s/Gerald B. Cohn
GERALD B. COHN
United States Magistrate Judge